UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID MEDINA, | ) |
|                     Plaintiff, | ) No. 21 CV 2431 |
| v. | ) Magistrate Judge Young B. Kim |
| AUTOMATED CONVERTING SOLUTIONS INC. and MIDWEST CANVAS CORPORATION, | ) |
|                     Defendants. | ) |
| JOSE MARTIN ROJAS GUTIERREZ, | ) No. 22 CV 4950 |
|                     Plaintiff, | ) |
| v. | ) |
| AUTOMATED CONVERTING SOLUTIONS INC. and MIDWEST CANVAS CORPORATION, | ) January 22, 2024 |
|                   Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiffs David Medina and Jose Martin Rojas Gutierrez bring their respective lawsuits, consolidated for the present motion to dismiss, against Defendants Automated Converting Solutions ("ACS") and Midwest Canvas Corporation ("Midwest") for injuries sustained at work while operating a turret winder machine. The amended complaints allege theories of strict products liability (Count I) and negligence (Count II) against ACS and intentional tort (Count III) against Midwest. Before the court is Midwest's motion to dismiss Count III of

Plaintiffs' respective amended complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds that the Illinois Workers' Compensation Act ("IWCA") bars Plaintiffs from asserting intentional tort claims against their employer. For the following reasons, the motion is granted and Count III is dismissed without prejudice:

## Background

For purposes of ruling on the motion to dismiss, the court accepts as true all well-pleaded facts in the amended complaints, (Medina R. 94, Amend. Compl.; Gutierrez R. 51, Amend. Compl.),[1] and draws all reasonable inferences in Plaintiffs' favor. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016). However, the court does not accept legal conclusions or conclusory allegations. *See Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (citations omitted).

Plaintiffs worked at Midwest at all relevant times and both suffered injuries while operating a turret winder machine designed and built by ACS to receive and spin canvas onto cardboard cores hands-free and "without intervention by a worker." (Medina R. 94, Amend. Compl. ¶¶ 7-8; Gutierrez R. 51, Amend. Compl. ¶¶ 7-8.) More specifically, the turret winder is designed to receive canvas material from an ACS-designed and manufactured A-Frame, which then folds and directs the canvas to the turret winder and then spins the canvas onto cardboard cores. (Id.)

---

[1] Plaintiffs' amended complaints repeat paragraph numbers. For example, both amended complaints have three distinct paragraphs numbered "8," one falling under each count pleaded. For purposes of this opinion, citations to the amended complaints refer to the paragraphs enumerated under Count III.

Plaintiffs allege that Midwest knew the machine did not operate hands-free and, despite being aware that "having its employees place their hands onto the spinning canvas material was risky and dangerous[,]" required workers to place their hands on the material being fed into the machine. (Medina R. 94, Amend. Compl. ¶¶ 9-10; Gutierrez R. 51, Amend. Compl. ¶¶ 9-10.) Plaintiffs both allege injuries from operating the machine with their hands—Medina in October 2020 and Gutierrez in September 2021. (Medina R. 94, Amend. Compl. ¶ 24; Gutierrez R. 51, Amend. Compl. ¶ 26.) In conclusory fashion, Plaintiffs allege Midwest "intentionally, and without accident, caused [Plaintiffs], to come into contact with the defective ACS machinery" and, "as a result[,]" caused them to sustain "severe and permanent injuries." (Medina R. 94, Amend. Compl. ¶¶ 26-28; Gutierrez R. 51, Amend. Compl. ¶¶ 28-30.)

Before Plaintiffs were injured, three other Midwest employees were allegedly injured while operating the turret winder with their hands. (Medina R. 94, Amend. Compl. ¶¶ 12, 15, 18; Gutierrez R. 51, Amend. Compl. ¶¶ 12, 15, 18, 21.) Even after becoming aware of these incidents, Plaintiffs say Midwest did not alter its instructions to the employees or otherwise advise them not to use their hands when operating the machine. (Medina R. 94, Amend. Compl. ¶¶ 13, 16, 19, 22, 23; Gutierrez R. 51, Amend. Compl. ¶¶ 13, 16, 19, 24, 25.)

## Analysis

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive

a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice of the claim's basis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Midwest contends that Plaintiffs' intentional tort claims are barred by the IWCA's exclusivity bar. Midwest is correct that the IWCA provides the exclusive remedy for employees' injuries unless the employee successfully proves that the injury falls under one of the Act's exceptions. 820 ILCS 305/5(a); *Hartline v. Celotex Corp.*, 651 N.E.2d 582, 584 (Ill. App. 1995). To avoid this exclusivity provision, a plaintiff must prove that his or her injury: "(1) was not accidental, (2) did not arise out of employment, (3) was not received during the course of employment or (4) was noncompensable under the Act." *Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 202 (Ill. App. 1980). Here, Plaintiffs argue that they have sufficiently pleaded that their injuries were not accidental and that Midwest acted with the specific intent to cause these injuries such that they can avoid IWCA's exclusivity bar. (Medina R. 111, Pls.' Consol. Resp.)

A.    **The Non-Accidental Exception**

An employee alleging that his or her employer committed an intentional tort is not subject to the IWCA's exclusivity provisions because "one who intentionally injures an employee should not be permitted to claim the injury was 'accidental' and

use the Act as a shield from liability." *Copass v. Ill. Power Co.*, 569 N.E.2d 1211, 1215 (Ill. App. 1991) (citations omitted). However, the standard an employee must meet to bring an intentional tort claim is substantial, because the employee must allege adequate facts to show that the employer acted "deliberately with the specific intent to injure." *Hartline*, 651 N.E.2d at 584. Indeed, it requires pleading more than a "substantial certainty" of injury and the mere exposure to harm is insufficient to demonstrate the requisite intent. *See id.* at 584-85 (asbestos exposure with "strong probability of death" insufficient to allege intentional tort)*; Webster v. FirstExpress, Inc.*, No. 18 CV 2777, 2019 WL 1254936, *2 (N.D. Ill. March 19, 2019) (exposing employee to dangerous situation by requiring overtime work insufficient to escape IWCA); *Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 338 F. Supp. 3d 875, 884-86 (N.D. Ill. 2018) (exposing employees to toxic uniforms without concern for consequences failed to meet IWCA's non-accidental exception); *Bercaw v. Domino's Pizza, Inc.*, 630 N.E.2d 166, 168 (Ill. App. 1994) (no specific intent found where employer knew with "substantial certainty" that pizza delivery would result in assault to employee). "Even if the alleged conduct goes beyond aggravated negligence," allegations of "knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, willfully failing to furnish a safe place to work, or even willfully and unlawfully violating a safety statute . . . fall[] short of the kind of actual intention to injure." *Copass*, 569 N.E.2d at 1216 (citing 2A. A. Larson, Workers' Compensation Law § 68.13, at 13-36 to 13-44 (1990)). Having reviewed the amended complaints and drawing all reasonable

5

inferences in Plaintiffs' favor, the court agrees with Midwest that Plaintiffs fail to adequately allege in Count III sufficient facts to show the requisite intent.

Plaintiffs argue that they pleaded specific intent and, in any event, that the court may infer such intent from the surrounding circumstances. (Medina R. 111, Pls.' Consol. Resp. at 5-6.) For support, Plaintiffs rely on *Daniels v. Venta Corporation*, 221 N.E.3d 503, 510-11 (Ill. App. 2022), where the plaintiff alleged that the employer knew "with 100% certainty" that directing the plaintiff to remove asbestos would harm him, yet did not tell the plaintiff that he was being exposed to asbestos, provide protective wear, or instruct him on how to reduce or eliminate asbestos exposure or inhalation." Unlike in *Daniels*, however, Plaintiffs here do not allege that Midwest knew Plaintiffs would be injured by working with the subject machine or allege sufficient facts to allow the inference of specific intent. At most, Plaintiffs allege that Midwest instructed Plaintiffs to operate the turret winder with their hands knowing it was "risky and dangerous" for them to do so and intended Plaintiffs to "c[ome] into contact with" the winder on the day of their injuries. (Medina R. 94, Amend. Compl. ¶¶ 22-26; Gutierrez R. 51, Amend. Compl. ¶¶ 24-28.) But as discussed, the IWCA's non-accidental exception requires much more than knowingly exposing employees to dangerous situations. As Midwest correctly points out, while Plaintiffs perhaps allege that they were exposed to "*possible or even probable harm* when working on the ACS machine, that does not equate to a specific intent to injure." (Medina R. 107, Midwest's Mot. at 4 (emphasis in original); Gutierrez R. 56, Midwest's Mot. at 4 (same).) In other words, "if a person commits an

6

act and only realizes there is a strong probability that the harm might result, his conduct is merely reckless," not intentional for purposes of the IWCA. *Wells v. IFR Eng'g Co.*, 617 N.E.2d 204, 205 (Ill. App. 1993) (affirming dismissal of intentional tort claim as barred by IWCA).

Two decisions from this district are instructive on this point. In *Webster v. FirstExpress, Inc.*, the plaintiff truck-driver alleged that the employer scheduled him for excessive overtime, knowing it would make him "more prone" to collisions. 2019 WL 1254936, at *3. And in *Zurbriggen v. Twin Hill Acquisition Company, Inc.*, 338 F. Supp. 3d 875, 885-86 (N.D. Ill. 2018), the plaintiffs alleged that American Airlines intended its employees to "come in contact with" defective uniforms and be exposed to the chemicals contained therein. Yet the allegations in both cases fell short because they did not demonstrate or raise a reasonable inference that the employers had specific intent to cause the consequences of the challenged actions. *Webster*, 2019 WL 1253936, at *3; *Zurbriggen*, 338 F. Supp. 3d at 886. Although the *Zurbriggen* court found that the plaintiffs successfully alleged that American Airlines knew the uniforms were unreasonably dangerous, it held that such knowledge was insufficient to establish that the employer "knew with requisite certainty that any particular employees, much less *the named plaintiffs*, would be harmed" by the uniforms. 338 F. Supp. 3d at 886-87 (emphasis in original).

Plaintiffs' allegations here suffer from the same deficiencies. The amended complaints allege that Midwest knew that the turret winder was "risky and dangerous" but do not go further. (Medina R. 94, Amend. Compl. ¶ 10; Gutierrez

7

R. 51, Amend. Compl. ¶ 10.) While Plaintiffs respond that Midwest "had the specific intent to injure the Plaintiff[s] by taking the deliberate step of ordering [them] to use [their] hands in the machine in a manner that [Midwest] knew with full certainty would cause injury[,]" any such inference is not supported by the pleadings. (Medina R. 111, Pls.' Consol. Resp. at 6-7.) First, as Midwest points out, Plaintiffs do not allege that Midwest directed them to place their hands "in" the turret winder, nor do they allege that Midwest possessed "full certainty" that the turret winder would injure them. (Medina R. 113; Midwest's Reply at 5 nn.1-2.) Plaintiffs' conclusory claims in their response brief are thus unsupported by the allegations in the amended complaints. As explained above, to survive the motion to dismiss, Plaintiffs must adequately allege that their employer acted with specific intent to cause injury. Allegations that Midwest intended Plaintiffs to come in contact with dangerous machinery do not rise to the level necessary to establish that Midwest acted with the deliberate *purpose* to injure. Even considering the allegations in the light most favorable to Plaintiffs, they fall short.

**B.     Amendment**

In the alternative, Plaintiffs seek leave to amend their complaints and attach proposed second amended complaints. (Medina R. 111, Pls.' Consol. Reply at 7-9, Ex. B.) Federal Rule of Civil Procedure 15(a)(2) provides that, after a party has amended once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." But leave to amend need not be granted in instances

of "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; and futility of amendment." *Airborne Beepers Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis omitted)).

The court grants Plaintiffs leave to file second amended complaints. Plaintiffs correctly note that this is the first time they are proposing amendments to Count III. However, the proposed second amended complaints only add the following single paragraph:

> [Midwest] acted deliberately by affirmatively instructing Plaintiff to use the turret winder in a manner that [Midwest] expressly knew with full certainty would cause injury to the Plaintiff in the same way that multiple employees had been injured before him and, in doing so, acted with conscious purpose and intention that the injury to Plaintiff would occur from his hands being used in the machine as instructed by [Midwest].

(Medina R. 111, Pls.' Consol. Reply at 8, Ex. B ¶ 28.) While Federal Rule of Civil Procedure 8 sets forth "liberal pleading requirements[,]" the court is not required to credit conclusory statements as true and the allegations must be sufficient to raise the possibility of relief above the "speculative level." *Twombly*, 550 U.S. at 555; *see also Zurbriggen*, 338 F. Supp. 3d at 882 (holding that plaintiff must provide "'more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" for her complaint to be considered adequate under [Rule] 8'" (quoting *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678)); *Hartline*, 651 N.E.2d at 586 (conclusory allegations inadequate to support action for

9

intentional tort to overcome IWCA). As such, while the court permits Plaintiffs to file a second amended complaint, the amendments they propose in response to the motion remain insufficient to state an intentional tort claim against Midwest.

## Conclusion

For the foregoing reasons, Midwest's motion to dismiss Count III is granted without prejudice.

ENTER:

_____
**Young B. Kim**
**United States Magistrate Judge**